EASTERN TRANSP. CO. v. EAST CAROLINA LUMBER CO. (PHILADEL-PHIA & READING COAL & IRON CO., Garnishee).

(District Court, E. D. Pennsylvania.  January 8, 1920.)

No. 23.

1. SHIPPING ☞39—OBLIGATION OF SHIPOWNER UNDER CHARTER PARTY TO FURNISH BARGES.

The obligation of one who had agreed by a charter party to supply barges for 18 voyages for a stipulated hire could be met only by performance, or by something which excused performance in whole or in part.

2. SHIPPING ☞52—BARGE OWNER, ON DEFAULT OF CHARTERER, HAS CHOICE OF REMEDIES.

Where shipper, who had chartered barges for 18 successive voyages, failed to perform by paying the freight and demurrage as stipulated, the owner may declare the breach and refuse further performance, recovering any sum already due, together with damages for breach, or disregard the breach and elect to continue performance.

3. SHIPPING ☞52—OWNER OF BARGES, ON BREACH MAY SUE FOR BREACH OF CHARTER.

Where the owner elected to continue performance, notwithstanding the default of the charterer, who had chartered barges for 18 successive voyages, such election carries with it the right to demand and bring an action in affirmance of the contract for each installment for freight and demurrage as it becomes due.

4. SHIPPING ☞52—SHIPOWNER'S ELECTION TO DECLARE OR WAIVE IS FINAL.

Where a shipper, who had chartered barges for 18 successive voyages, defaulted in payment of freight and demurrage, the owner's election to declare the breach, or to waive it, is final, except in case of a right of an election in successive breaches.

5. SHIPPING ☞52—SHIPOWNER CANNOT DECLARE BREACH OF CHARTER AFTER HE HAD WAIVED SAME.

Where an owner, who had chartered barges for 18 successive voyages, did not elect to declare the breach on the shipper's default in payment of

freight and demurrage, the owner, having waived the default, cannot, after his own subsequent default, declare a breach and recover therefor. ,

6. SHIPPING ☞51—REQUEST OF SHIPPER FOR EARLIER DELIVERY OF VESSEL THAN CHARTER PARTY PROVIDED NO DEFENSE FOR FAILURE TO FURNISH VESSELS AT TIME PROVIDED.

Where the owner, who agreed to furnish barges for 18 successive voyages, for some time delivered them according to the charter party, and then defaulted, it is no defense to defaults that the shipper asked for barges faster than the contract schedule, and then failed to load them and promptly pay demurrage and freight.

7. SHIPPING ☞51—INABILITY TO PROCURE TUGS NO DEFENSE TO FAILURE TO FURNISH BARGES AS PROVIDED.

Where an owner chartered barges for 18 successive voyages, and the charter party did not make any exceptions to the owner's inability to get tugs, the owner's inability to get tugs will not excuse failure to deliver barges according to the charter party.

8. CONTRACTS ☞316(4)—TIME OF ELECTION TO DECLARE BREACH ON DEFAULT OR TO WAIVE IT.

Where one party to a contract defaults, the innocent party has a right of election, which occurs at each succeeding default, but the election cannot be deferred until after the contract is at an end and the rights of the parties have become otherwise fixed.

9. SHIPPING ☞37—WILLINGNESS TO CONTRACT NOT EQUIVALENT TO ENTERING INTO CHARTER PARTY.

A statement by an owner of barges that in effect that it was willing to enter into a charter party embodying the contract suggested by the shipper, but that it would not agree until the contract was put into form, is not equivalent to a contract, and cannot be made basis of an action.

In Admiralty. Libel by the Eastern Transportation Company against the East Carolina Lumber Company, and with the Philadelphia & Reading .Coal & Iron Company as garnishee. Sur trial hearing on libel, answer, and proofs. Libel dismissed, as well as cross-libel filed by respondent.

Willard M. Harris, of Philadelphia, Pa., for libelant.

Wm. Clarke Mason, of Philadelphia, Pa., for respondents.

DICKINSON, District Judge. The propositions by which this case is ruled are broadly stated these: .

[1] 1. The obligation assumed by libelant under the charter party was to supply barges for 18 voyages, and its right was to receive the freight earned and demurrage due when payable.

2. This obligation could be met only by performance or something which excused performance in whole or part.

[2] 3. If the shipper failed on his part to perform, by paying freight and demurrage as stipulated, the libelant had one of two rights: One was to declare the breach and refuse further performance by declaring the contract off, recovering what was due, including damages for the breach of the contract; the other was to disregard the breach, elect to continue performance notwithstanding the default, and recover, when the contract was performed, all to. which it was entitled.

[3] 4. This latter right would carry with it as its corollary the right to demand and bring an action in affirmance of the contract for each installment of freight and demurrage as it became due and payable.

[4] 5. The two rights mentioned are, however, alternative rights, and, although either might be exercised by the libelant at its election, the election, when made, was final (except that the right of election recurred at each succeeding breach), and the election to keep the contract in force kept alive all the obligations of both parties thereunder.

[5] 6. The libelant, having waived defaults in the payment of freights and elected to keep the contract in force, had no right after its own subsequent default, and after the time of performance was past, to declare a breach and recover on the contract, which had not been performed.

The parties to this action have, by their sins of commission and omission, or at least the confusion in their dealings with each other, created so many difficulties with which their proctors must cope, and have cast upon the trial court such an unnecessarily heavy burden of work, that they have forfeited all claims to consideration, and deserve to be left where, at the close, they found themselves to be. In the first place, they left open to dispute whether they had made one contract or two. In the second place, neither had, or at least neither acted upon, any clear concept of what contract it claimed to have. In the third place, although this is doubtless a consequence of the others, each was seeking to secure all the rights which could possibly flow to it out of the contractual dealings between them, without paying the slightest attention to the obligations upon which those rights depended. Neither even seems to have known or regarded as of any importance with whom it had a contract.

The thread by which we may find our way out of the labyrinth which the parties have builded is found, if there is any, in the thought that the two lumber companies made one or more contracts, and then sought to perform by following the requirements of another contract, which the respondent Turner had made with the garnishee. The result was that each was complaining of defaults of the other, based, not upon the charter party between them, but based upon the Turner contract. The same explanation, in another form, is that the libelant was looking to the first contract, and the respondent to what has been called the second contract of July 23d.

Proctor for respondent and the cross-libelant has cut the gordian knot of his difficulties by averring the existence of a second contract, and taking his stand upon it. In consequence, all he claims depends upon the finding of such second contract. Proctor for libelant and the cross-respondent has been able to find no such short and straight road out of his difficulties. He has made it entirely clear that the libelant seeks to recover the freight claimed to have been earned by two barges and demurrage due to seven others.

The basis of his claim of right, or his cause of action, is, however, by no means of like clearness. The best he has been able to do, as it is perhaps the best which could be done, is to take his stand upon the broad ground that the libelant had a contract which, if performed, or which, so far as performed, gave it the right to what is claimed, and that full performance was excused by respondent's breach, which, when

declared, gave libelant the right, of which it availed iself, to call off the contract and recover for what it had done thereunder.

The proposition of law involved in this statement of the position of the libelant is in itself clear enough and is sound. The difficulty is in applying it to the fact situation which this case presents. A statement of the facts in anything like detail would expand this opinion, already overlong, to an impossible length. The proctor for the libelant, with an industry and care for which he is to be commended, has grouped some of them for us in his brief. This statement we have found very helpful. Notwithstanding his efforts, however, to keep the statement within limits, by confining it to the most salient facts, he has required nearly 60 pages for the discussion. This gives a foretaste of what an inquiry into all of the matters in controversy would involve. To meet the task as best we may, we will confine this opinion, so far as possible, to a statement of the main facts upon which the rulings made depend, and discuss the evidentiary facts, along with the findings of fact, which will be filed herewith.

We feel grateful, also, to the proctor for respondent; who has, as before stated, rested his defense, so far as it is affirmative, and his cross-libel wholly, upon the existence of the second contract, which he asks us to find.

One of the many difficulties which an adequate discussion of the merits of this case presents is that there are so few, if any, facts which may be called undisputed. The contract, even of the parties, is in dispute. It is not in dispute however, that the lumber companies executed the charter party, which bears date July 10, 1915. Nor is its meaning in dispute.

The libelant was to have ready for loading at the James City wharves, Newbern, N. C., 18 barges, one on each of named dates. These dates covered the period from August to March, both inclusive, and called for two barges a month, one on the 1st and the other on the middle day of the month, except during the months of October and November, when a third barge was to report on the 26th of each month. These arrivals were to be "on or about the date named, weather conditions permitting." The freight was made payable on delivery of cargo. As will appear by the findings of fact, in which the movements of each barge are followed, the libelant had a barge to report for loading always on time, and usually ahead of time, until November 26, 1915. This statement includes 9 barges out of the 18. There was a barge due on that date, and another on December 1st following. The next barges to arrive reported December 6th and 10th. No other barges reported until February 14, 1916, although there were 4 barges due on the intermediate dates and one on that date. The next contract arrival dates were March 1st and 16th (the latter being the closing date of the contract), but no barges reported until March 20th and April 20th. The freight on neither of the two last barges was paid. The libelant supplied no more barges.

It is to be observed that it supplied 9 barges in accordance with its contract; then 2 barges, each of which was 11 days behind schedule; then no barges for four trips; then one barge, which was 2 months

late, or on time, according to which date you refer it, and then two barges, which were 20 and 36 days, or 80 and 86 days, late, according as you refer them to the nearest or the unfilled arrival dates. It will be further noted that neither of the two last-named barges was supplied within the contract time, and that 5 of the barges were never supplied.

[6] The libelant, in consequence, is confronted with these questions: (1) How can it recover on a contract to furnish 18 barges, after it has refused to perform? (2) How could it excuse nonperformance by declaring a breach of the contract, when it was itself in default, and after the time limit of the contract had expired?

The only answer counsel for libelant puts forth is that the respondent nagged and harassed the libelant, by asking for barges faster than the contract schedule, and then not loading them, and by not paying promptly either demurrage or freight, and that libelant was hampered in having its barges on time by its inability to get tugs to tow them.

However real its troubles and difficulties may have in fact been, and they were real enough, we see in them no legal excuse for nonperformance. The first excuse is either unjustified or a dangerous one to make. The charter party called for a schedule which, until November 26th, was more than met. The answer of libelant to complaints made during this time was ready at hand. It was more than living up to its contract. Complaints after that date were not only justified, but respondent might well have called off the contract.

The respondent has set up a second contract to furnish one additional barge per month. This second contract the libelant denies. If the complaints of the respondent were because of nonperformance of this second contract (and the fact is it was in no respect performed), the libelant recognized the existence of this contract by attempting to perform or to excuse nonperformance.

[7] The second excuse, however well grounded in fact, and it is very strongly supported, affords no excuse in law. The libelant contracted to supply barges at stated times. Bad weather might prevent performance, and it contracted itself out of liability in the event of default so caused. If it was unwilling to assume the duty of towage, or providing it, such a stipulation should have been inserted, or it should have protected itself through a tug contract. The courts cannot protect it against the consequences of contracting to do more than it was able to perform.

[8] The real situation was this: The complaints of the respondent before November 26th were unjustified, except on the basis of a second contract. There were repeated defaults in the payment of freights. The libelant had just cause to declare a default, but it could not waive this default and hold to the contract, and at the same time use these waived defaults as an excuse for its own subsequent defaults, or for nonperformance of its contract.

The conclusions reached are that the libelant has shown no cause of action, because it has admittedly not performed in full, nor has it shown a right to recover for part performance, through excusing full performance by declaring a breach because of the default of the other

party to the contract; no breach having been declared until the libelant was itself in default, and the time of performance by it was past. It may be that this places the libelant in the position of being the victim of its own indulgence to the respondent. If it had declared a breach at any time upon failure of the shipper to pay freights, it could have relieved itself of all further obligations under its contract. The respondent would then have been at liberty to secure barges elsewhere. It had the right to hold to its contract, and thus keep in force the obligation of the shipper to take the barges. The keeping of the contract in force meant, however, the continuance of its own obligation to perform.

A contract, even after one party is in default, is either on or off, and although the innocent party has the right of election, and although the right recurs at each succeeding default, it is a right which must be exercised during the life of the contract, and the election cannot be deferred until after the contract is at an end, and the rights of the parties have become otherwise fixed.

[9] The conclusion that the libel must be dismissed makes it unnecessary to discuss any of the other questions which arise, except those arising under the cross-libel. This is founded upon the proposition that the letter of July 23, 1915, is contractual. Our finding, as stated, is that it is not. Willingness of the parties to contract is not enough. The letter of libelant is in effect that it was willing to enter into a charter party embodying the contract suggested by the respondent, but that it would not so agree unless and until the contract was put in that form. As already twice stated, the claim of the cross-libel is based on the second contract and falls with it. The real situation with respect to the charter party contract is that neither of these parties has a claim against the other, because neither has performed.

An order may be prepared, dismissing both the libel and cross-libel, each party to pay their own costs, and neither party to pay costs to the other, the record costs to be paid by the one by whom incurred. To give definite date to the order none is now made, but either party has leave to submit the form of one to be entered.

⬤➾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes